UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

ROBERT CARLANTONE,                          :
                                            :
                         Plaintiff,         :          08 Civ. 07393 (SHS)
                                            :
                                            :          MEMORANDUM OPINION
                                            :               & ORDER
             -against-                      :
                                            :
MICHAEL J. ASTRUE,                          :
COMMISSIONER OF SOCIAL SECURITY,            :
                                            :
                         Defendant.         :
-------------------------------------------------------------x

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: 7/14/09

SIDNEY H. STEIN, U.S. District Judge.

> Plaintiff Robert Carlantone brings this action to review a final decision of the
Social Security Commissioner pursuant to 42 U.S.C § 405(g).

## I.    BACKGROUND

### A.    Procedural History

> Carlantone, a sanitation worker was in a rollover accident in his sanitation truck
on June 7, 1993, more than sixteen years ago.  The following year, he applied for Social
Security Disability benefits.  The Social Security Administration denied his application
on October 17, 1994, and plaintiff appealed to an Administrative Law Judge ("ALJ").

> After a hearing, ALJ Jose R. Gautier found that plaintiff was not disabled.  (R. at
111-119.)[1]  Carlantone appealed to the Social Security Administration Appeals Council,
which on April 15, 1997 remanded the matter to an ALJ in order for Carlantone to be

---

[1] "R. at ___ " refers to the administrative record filed by the Commissioner of Social Security as part of his
Answer to the Complaint.

able to examine certain exhibits and for the ALJ to "set forth all findings and conclusions" reached by him. (R. at 124-126.)

A second hearing was held before a new ALJ—Alan T. O'Sullivan—who also found that plaintiff was not disabled. (R. at 176-183.) Plaintiff appealed again. On September 1, 1999, the Appeals Council remanded the matter to ALJ O'Sullivan in order for the ALJ to issue a new decision to "make clear the basis of his findings and conclusions regarding the claimant's residual functional capacity." (R. at 190–91.) On remand, ALJ O'Sullivan found again that plaintiff was not disabled. (R. at 25–40.) Plaintiff again requested review, but on November 3, 2003, the Appeals Council denied his request. (R. at 6–9.) Plaintiff then commenced a civil action in the United States District Court for the Southern District of New York. (R. at 6.)

The District Court, by stipulation of both parties, remanded the case to the Appeals Council. Carlantone v. Barnhart, No. 04-0102 (S.D.N.Y. Sept. 10, 2004); (R. at 367–68.) The Council in turn remanded the case to the ALJ with instructions to give Carlantone "a full and fair hearing, with testimony," and to "re-evaluate all the evidence in the record, including any received on remand." (R. at 371–72.) The ALJ heard Carlantone's case and yet again found plaintiff was not disabled. (R. at 354-364.) Carlantone requested review by the Appeals Council, which declined to assume jurisdiction over plaintiff's appeal. (R. at 236.)

Plaintiff then filed the present action to review the ALJ's most recent findings. The parties have each moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) and 42 U.S.C. § 405(g). Both parties here seek remand, but for different purposes. Defendant seeks remand pursuant to the fourth sentence of 42 U.S.C. 405(g), which

provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Pursuant to the same sentence, plaintiff asks this Court to reverse the ALJ's decision, find him disabled, and then remand for the calculation of benefits.


      B.    Medical History

Plaintiff went to Northern Westchester Hospital Center after the June 7, 1993 accident, complaining of pain in the lower back and numbness of the right fingertips and foot. An x-ray showed straightening of the cervical spine. Plaintiff was discharged in stable condition and diagnosed with cervical strain. An MRI, taken on September 28, 1993, showed a herniated disc at L3-L4 and a bulge of the disc at L4-L5. (R. at 80.)

On March 26, 1994, plaintiff began chiropractic treatment with Dr. Stanley Sonn and Dr. Henry Hall. In an April 1994 report to the Workers' Compensation Board, Dr. Sonn wrote that plaintiff had "low back syndrome," a "herniated disc at L3-L4", and a "bulge disc at L4-L5." (R. at 83.) He diagnosed "lumbago" and "lumbar radiculopathy" and checked the "totally disabled" box on the form. (R. at 83.) One year later, Dr. Hall indicated in a similar report that he found "lumbago; lumbar radiculopathy; herniated disc L3, L4; and bulge disc L4 L5." (R. at 107.) He also checked the "totally disabled" box on the form. *Id.* In Dr. Hall's final report on August 21, 1997, he opined that plaintiff could sit, stand and walk for up to two hours in an eight-hour work day, and lift up to five pounds occasionally. Dr. Hall also wrote that Carlantone could neither push nor pull with his upper or lower extremities. (R. at 155.) He checked boxes indicating that Carlantone

3

should "totally avoid" "unprotected heights"; "being around moving machinery"; "exposure to marked changes in temperature and humidity"; "driving automotive equipment;" and "exposure to dust, fumes, and gases." *Id.*

Before plaintiff stopped seeing Dr. Hall, he began treatment with Dr. William Unis, an orthopedic surgeon. Dr. Unis examined Carlantone on six separate occasions. During the course of those examinations, Dr. Unis noted divergent degrees to which plaintiff's motion was restricted. In addition, Dr. Unis wrote that plaintiff experienced "pain in the low back with radiation" to the lower extremities. (R. at 143.) At some of the examinations plaintiff used a cane and wore a brace. In a Residual Functional Capacity Form dated October 19, 1997, Dr. Unis checked off boxes indicating that plaintiff could sit, that he could "[s]tand/walk" for two hours in an eight-hour work day, that he could "frequently" lift up to five pounds, and that he could "occasionally" lift from five to ten pounds, but that he could "never" lift over ten pounds. (R. at 159). Furthermore, Dr. Unis checked the "yes" boxes to state that plaintiff was capable of "[g]rasping"; "[p]ushing/pulling"; and "[f]ine manipulations" with both right and left hands, but checked the "no" box when asked whether Carlantone could use either leg for "pushing/pulling." *Id.*

In an earlier Residual Function Capacity Form dated May 17, 1996, Dr. Unis checked boxes indicated that plaintiff could sit and "[s]tand/walk" for up to one hour in an eight-hour day. (R. at 138.) In addition, Dr. Unis checked off boxes stating that Carlantone could "never" "[l]ift" zero to five pounds, but could "[o]ccasionally" "[c]arry" zero to five pounds. *Id.* Finally, Dr. Unis opined that plaintiff could use left or

4

right hands for "[g]rasping" and could not use left or right legs for "[p]ushing/pulling."
*Id.*

Plaintiff was also examined by consulting doctors. Dr. Mario Mancheno examined plaintiff in June 1994. He noted that plaintiff's pain was "aggravated [by] going up stairs, pushing, pulling, lifting, carrying heavy objects." (R. at 86.) Additionally, Dr. Mancheno observed that Carlantone walked "normally" and had "no difficulty getting on the [exam] table or lying down." *Id.* Dr. Mancheno found that plaintiff's upper and lower extremities had full range of motion. *Id.* Dr. Rosenberg,[2] a state agency medical consultant, gave a similar diagnosis in September 1994. (R. at 90.)

Dr. Igor Khelemsky examined plaintiff consultatively in July 1995. At the time, plaintiff walked with a cane and had "difficulty getting on and off the examining table or dressing and undressing himself for the exam." (R. at 109.) In his assessment, Dr. Khelemsky stated that plaintiff's ability to use upper extremities, stand, and walk "may be" impaired due to pain. (R. at 110.) He also wrote that "the reported severity of pain doesn't correspond to findings on the physical neurological exam." *Id.*

Neurologist Dr. Bridgett Patterson-Marshall examined plaintiff in January 1998. In her report, she stated that plaintiff had a "normal gait" and had no difficulty getting on or off the table. Dr. Patterson-Marshall recommended that plaintiff "avoid bending, lifting heavy objects, or prolonged walking" but wrote "the prognosis is good." (R. 169.)

In December 1999, plaintiff saw Dr. Zeretsky and Dr. Karam. Dr. Zeretsky noted that plaintiff used a cane and "appear[ed] disabled." (R. at 218.) Additionally, he stated that plaintiff is limited in his capacity to sit, stand, walk, lift, carry, and bend. *Id.* In contrast, Dr. Karam found muscle power in the lower extremities was normal. Dr. Karam

---

[2] Dr. Rosenberg's first name is not set forth in the record.

noted a 35-degree leg raise but also stated that plaintiff had "excellent coordination and control of both lower extremities." (R. at 200.)

Finally, on March 18, 2005, Dr. Donald Goldman examined plaintiff.  Dr. Goldman found sustained permanent disability in the cervical spine due to a gunshot wound that had occurred prior to the June 7, 1993 accident.  (R. at 402.)  Dr. Goldman also found permanent disability of the lumbar spine as demonstrated by the MRI of September 28, 1993.  Further, Dr. Goldman found that plaintiff was unable "to work in any type of employment that require[s] him to sit for more than 20 to 25 minutes, stand more that 15 to 20 minutes." *Id.*

Since the last administrative decision in 2005, plaintiff has continued to see doctors, and their reports are included in the record.

## II.    DISCUSSION

### A.    Standard of Review

This Court's review of the Commissioner's decision is limited.  Vieno v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002).  This Court only sets aside the Commissioner's decision when it is based on legal error or is not supported by substantial evidence in the record.  Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (citing Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir.1998)); Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990).  Furthermore, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).  "Substantial evidence" is "defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rosa,

168 F.3d at 77 (quoting <u>Pratts v. Chater</u>, 94 F.3d 34, 37 (2d Cir. 1996)).  Finally, this

Court is limited in that it cannot weigh medical evidence; conflicts of medical evidence

are to be resolved by the Commissioner.  <u>Veino</u>, 312 F.3d at 588.

Plaintiff argues that the ALJ's decision was based on legal error such that this

Court should reverse it and remand for a determination of the benefits due to plaintiff.

Defendant acknowledges that the ALJ erred, but rather than reversal, defendant argues

for remand to fill "gaps in the administrative record." <u>Rosa</u>, 168 F.3d at 82.  Thus, the

questions before this Court are (1) whether the ALJ erred in finding plaintiff not disabled,

and (2) if the ALJ did err, whether this Court should reverse or remand.  If there is not

substantial evidence supporting the ALJ's decision, this Court must reverse the ALJ and

remand only for calculation of the benefits.  <u>Parker v. Harris</u>, 626 F.2d 225, 235 (2d Cir.

1980).  If there is substantial evidence for the ALJ's decision, then remand will be

appropriate to fill gaps in the record, if any.


B.      <u>"Disability" for the Purposes of Disability Benefits</u>

A claimant is disabled if he is unable "to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment."  42 U.S.C. §

416(i)(1).  The ALJ applies a five step sequential evaluation to determine whether the

claimant is disabled.  20 C.F.R. § 404.1520.  The United States Court of Appeals for the

Second Circuit has articulated the five-step evaluation as follows:

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity. If he is not, the [Commissioner]
> next considers whether the claimant has a "severe impairment" which
> significantly limits his physical or mental ability to do basic work
> activities. If the claimant suffers such an impairment, the third inquiry is
> whether, based solely on medical evidence, the claimant has an

7

impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Rosa, 168 F.3d at 77.  On the fifth step, there is a limited burden shift to the

Commissioner to "show that there is work in the national economy that the claimant can

do; he need not provide additional evidence of the claimant's residual functional

capacity." Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009).

In this case, the only issue involves step five of the analysis; namely, whether

there is other work which Carlantone could perform.  The Commissioner acknowledges

discrepancies in the decision.  Plaintiff disputes the ALJ's finding of fact as to his ability

to do other work.  The evidentiary questions the parties have brought before this Court

stem from ambiguity in the ALJ's decision and remand is therefore appropriate.

### C.    There Are Gaps in the Administrative Record

#### 1.    The Treating Physician's Opinion

The ALJ is required to explain why and how he weighed the evidence, especially

if the opinion of the treating physician is not given controlling weight.  The ALJ must

give "good reasons" for not applying controlling weight to the treating physician.  20

C.F.R. § 404.1527(d)(2).  The treating physician rule, id. § 404.1527(d)(2), requires the

ALJ to give controlling weight to the treating physician's opinion unless it is

"inconsistent with the other substantial evidence in [the] record."  Id. § 404.1527(d)(2).

8

Where the treating physician's opinion is not given controlling weight, the ALJ must determine how much weight to give the opinion by considering the following six factors: the length and frequency of the treatment relationship; the nature and extent of the relationship; the amount of evidence the physician presents to support his or her opinion; the consistency of the opinion with the record; the physician's area of specialization; and any other factors the claimant brings to the ALJ. *Id.* § 404.1527(d)(2)(i)-(d)(6) ("When we do not give the treating source's opinion controlling weight, we apply the factors listed [above] in determining the weight to give the opinion."). Furthermore, the ALJ's decision must "be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion." <u>Longbardi v. Astrue,</u> No. 07 Civ. 5952, 2009 WL 50140, at *27 (S.D.N.Y. Jan. 7, 2009).

In this case, the ALJ discounted the opinion of the treating physician, Dr. Unis,[3] finding it inconsistent with the overall clinical findings and diagnostic studies." (R. at 361). The ALJ analyzed the length, frequency, nature and extent of the treating relationship. (R. 361). Rather than using these factors to determine what weight to give Dr. Unis's opinion, the ALJ simply stated that the Doctor's opinion "is not entitled to controlling weight" without further explanation. (R. 361). This statement is not sufficiently specific; it is unclear what, if any, weight was given to Dr. Unis's opinion. 20 C.F.R. § 404.1527(d)(2); <u>Halloran v. Barnhart,</u> 362 F.3d 28, 32 (2d Cir. 2004). Remand is proper in order for the ALJ to give appropriate weight to Dr. Unis's opinion in accordance with the six factors listed in 20 C.F.R. § 404.1527(d)(2)(i)-(d)(6); <u>Longbardi,</u> at 2009 WL 50140, at *27.

---

[3] Plaintiff contends—and defendant does not dispute—that Dr. Unis is the treating physician.

2.    The ALJ Failed to Properly Weigh Other Opinions

The ALJ also erred by failing to weigh the opinions of Dr. Hall and Dr. Sonn.  As chiropractors, Dr. Hall and Dr. Sonn are not considered "acceptable medical source[s]" for the purposes of establishing an impairment.  20 C.F.R. § 404.1513(a).  The opinions of chiropractors, however, are acceptable to show "the severity of . . . [claimant's] impairment[s]."  20 C.F.R. § 404.1513(d).  Therefore, the ALJ should consider the opinions of Dr. Hall and Dr. Sonn and explain what weight he gives those opinions.

Also, the ALJ failed to explain why the opinions of Dr. Patterson-Marshall, Dr. Mancheno, and Dr. Khelemsky outweigh the other opinions.  The ALJ should give weight to each doctor's opinion based on whether the doctor examined the patient; the extent of the treatment relationship; the consistency of the opinion with the rest of the record; and whether the doctor specializes in the area of concern.  20 C.F.R. § 404.1527(d)(1)-(5).  The ALJ briefly discusses each of these doctor's opinions but fails to explain adequately how they are weighed or why he weighed them as he did.  This too is grounds for remand.  20 C.F.R. § 404.1527(f)(2)(ii) ("[T]he administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.").

C.     Remand, Not Reversal, Is Appropriate Due To Conflicting

Evidence in the Record

In this case, there is conflicting evidence as to whether plaintiff is disabled.  Eight

physicians and two chiropractors examined plaintiff and a physician testifying as a

medical expert at the hearing interpreted his medical history.  Three physicians, Doctors

Mancheno, Khelemsky, and Patterson-Marshal, gave opinions that support the ALJ's

conclusion that plaintiff can perform sedentary work.  On the other hand, plaintiff's

treating physician, his chiropractors and several consulting physicians have given

opinions that he cannot perform sedentary work.

As noted above, this Court can only set aside the ALJ's decision if it is not

supported by substantial evidence or the ALJ made a legal error.  Burgess, 537 F.3d at

129.  Remand for further proceedings is inappropriate when no evidence supports the

ALJ's decision, rendering remand futile.  Here, the conflicting evidence blurs the

record's support for the ALJ's conclusion.  However, this Court cannot weigh medical

evidence.  Veino, 312 F.3d at 588.  Therefore, remand is appropriate in order for the ALJ

to weigh the evidence properly and determine plaintiff's ability to work.

11

## III.   CONCLUSION

For the reasons set forth above, the Commissioner's motion for judgment on the

pleadings is granted and plaintiff's motion is denied.  This action is remanded to the ALJ

pursuant to the fourth sentence of 42 U.S.C. 402(g) to further consider and weigh the

opinions of Doctors Unis, Hall, Sonn, Patterson-Marshall, Mancheno, and Khelemsky.


Dated: New York, New York
       July 14, 2009

                              SO ORDERED:

                              _____
                              Sidney H. Stein, U.S.D.J.

12